UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HUMAN RIGHTS DEFENSE CENTER,

Plaintiff,

v.

COUNTY OF NAPA, et al.,

Defendants.

Case No.  20-cv-01296-JCS

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES**

Re: Dkt. No. 37

## I.       INTRODUCTION

Plaintiff Human Rights Defense Center ("HRDC") asserted claims against Defendants County of Napa and Dina Jose, Director of Napa County Department of Corrections, under both federal and state law.  After four months, the parties entered into a stipulated consent decree ("Consent Decree").  HRDC now brings a Motion for Attorneys' Fees, Costs, and Expenses ("Motion").  The Court finds the Motion is suitable for determination without oral argument, pursuant to Civ. L.R. 7-1(b).  For the reasons stated below, the Motion is GRANTED IN PART and DENIED IN PART.[1]  The Court awards $255,925.00 in attorneys' fees and $808.35 in costs.

## II.      BACKGROUND

### A.       Factual and Procedural Background

HRDC publishes and distributes reading material to incarcerated persons, including persons incarcerated at the Napa County Jail.  Complaint (Dkt. 1) ¶ 24–25. According to HRDC, Defendants "adopted and implemented mail policies and practices that unconstitutionally prohibit[ed] delivery of publications and correspondence mailed by [HRDC] to persons

---

[1] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

incarcerated at [Napa County Jail][,]" violating both state and federal law.  *Id.*  ¶ 1. To satisfy state law exhaustion requirements, Plaintiff submitted a state tort claim for damages challenging these policies and practices to Defendant County of Napa on August 20, 2019.  The County of Napa notified HRDC that the tort claim had been rejected in a letter dated September 9, 2019.  *Id.* HRDC filed this action on February 20, 2020.

In its complaint, HRDC asserted the following claims: (1) violation of the right to free speech under the First Amendment and 42 U.S.C. § 1983; (2) violation of the right to due process under the Fourteenth Amendment and 42 U.S.C. § 1983; (3) violation of the right to free speech under the California Constitution, Art. I, Sec. 2; (4) violation of the right to due process under the California Constitution, Art. I, Sec. 7; and (5) violation of the Bane Act, California Civil Code section 52.1.  *Id.* ¶¶ 43–68.  HRDC sought declaratory and injunctive relief, damages, and an award of attorneys' fees and costs "under 42 U.S.C. § 1988 and under other applicable law, including but not limited to California Code § 52.1 and California Code of Civil Procedure § 1021.5."  *Id.* at 15 (Request for Relief).

On February 21, 2020, HRDC filed a motion for preliminary injunction seeking to enjoin Defendants from refusing to deliver HRDC's materials to incarcerated persons.  *See generally* Motion for Preliminary Injunction (Dkt. 8).  The motion was noticed for hearing on April 3, 2020, but the parties stipulated to continuances and the hearing was reset for July 17, 2020.  *See* Dkt. 24. Prior to the scheduled motion hearing, the parties resolved all of their disputes with the exception of attorneys' fees and costs, and on June 11, 2020, the Court approved the Consent Decree.  In the Consent Decree, Defendants agreed to change their mail policies and to pay HRDC $12,500 in damages.  *Id.* ¶¶ 7–8.  The Consent Decree also provides that the parties "agree that, for the purposes of the adjudication of Plaintiff's petition for reasonable attorney's fees and costs, Plaintiff is the prevailing party under 42 U.S.C. § 1988."  *Id.* ¶ 4.

**B.    The Parties' Arguments**

**1.  The Motion**

HRDC seeks an award of attorneys' fees and costs incurred in this case by its own in-house counsel and retained counsel Rosen Bien Galvan & Grunfeld LLP ("RBGG").  In the

United States District Court
Northern District of California

Motion, HRDC asks the Court to award $190,912.95 in attorneys' fees for work on the merits, which includes a 1.5 multiplier on the base amount of fees incurred on the merits of $127,275.30. Notice of Motion.  In addition, it requests $808.35 in costs for the following costs: (1) $445 for Court filing fees; (2) $356.50 for service of process fees; and (3) $6.85 for the certified mailing of the government tort claim.  Declaration of Jeffrey L. Bornstein in Support of Plaintiff's Motion for Reasonable Attorney's Fees and Expenses ("Bornstein Decl.") ¶ 41 & Ex. E (table of cost disbursements).  Finally, HRDC seeks an award of attorneys' fees for work on the fee motion ("fees on fees").  *Id.*  According to HRDC, at the time the Motion was filed it had incurred $26,350 in fees on fees ($24,465.00 for RBGG's work and $1,950.00 for HRDC's work).  *Id.*;  *see also* Supplemental Declaration of Jeffrey L. Bornstein in Support of Plaintiffs' Motion for Reasonable Attorneys Fees and Expenses ("Bornstein Suppl. Decl.") ¶ 2.  As discussed below, the amount of attorneys' fees requested for fees on fees was subsequently revised upward.

HRDC argues in the Motion that it is the prevailing party as to both its federal claims under 42 U.S.C. § 1983 and its state law claims and therefore is entitled to an award of attorneys' fees under 42 U.S.C. § 1988 and California Code of Civil Procedure section 1021.5.  Motion at 9. As to the latter, HRDC contends an award of fees is warranted because in addition to prevailing on its state law claims, the requirements of section 1021.5 (discussed below) have been satisfied.  *Id.* at 10-11.   HRDC argues further that the amount it requests in fees is reasonable, first addressing its lodestar and requested multiplier as to work on the merits (including "pre-litigation investigation, the filing of a government tort claim, the near-simultaneous preparation and filing of the complaint and the motion for preliminary injunction . . . extensive and time-consuming settlement negotiations with Defendants, and the drafting of the Consent Decree") and then addressing the reasonableness of the amount requested in fees on fees.  *Id.* at 9-20.

As to the merits work, HRDC argues its lodestar should be awarded because the hours expended in the case are reasonable and appropriate and the rates charged are in line with prevailing rates in the community for comparable services.  *Id.*  at 11-12.  It asserts that a 1.5 multiplier is warranted "due to the quality and efficiency of Plaintiff's lawyers' work, the excellent results rapidly achieved, and the contingent risk of the case."  *Id.* at 12.

HRDC argues the time spent on the case by its attorneys (both in-house and retained) "was both necessary and reasonable given the history of the case, the nature of the litigation, and the settlement negotiations." *Id.* at 12. It asserts that its time "is fully documented by detailed contemporaneous time records showing discrete entries describing each item of work performed and recorded by tenths of an hour." *Id.* (citing Bornstein Decl. ¶¶ 7, 12, Ex. F; Marshall Decl. ¶ 3, Ex. A). In addition, HRDC represents that both in-house counsel and RBGG exercised billing judgment, making reductions "based on the same careful review of billing records that is typically conducted prior to sending a bill to a fee-paying client[,]" resulting in reductions of $18,137.20. *Id*. at 13. According to HRDC, this amount reflected a reduction of fees equal to approximately 12.47% of the total hours worked on the merits. *Id.* at 13. HRDC further asserts that it staffed the case with "small and efficient teams of attorneys and support staff[,]" and divided the work so as to avoid duplication of effort. *Id.* at 13-14.

HRDC contend that "[m]uch of the work performed by Plaintiff's counsel could have been avoided but for Defendants' choices at critical moments in the case." *Id.* at 14. For example, according to HRDC "Defendant County of Napa summarily denied Plaintiff's government tort claim and ignored Plaintiff's offer to enter into settlement negotiations prior to the commencement of litigation." *Id.* (citing Bornstein Decl. ¶ 20). HRDC also asserts that the draft Consent Decree it sent to Defendants on March 23, 2020 was "substantially similar in material respects" to the version that the Court approved on June 11, 2020 and yet Defendants "chose to engage in more than two months of protracted settlement negotiations—including multiple conference calls and e-mails, the exchange of draft revisions and definitions, and ultimately a final offer by Plaintiff's counsel—until at last agreeing to terms that are nearly the same as Plaintiff's original settlement proposal[.]" *Id.* at 14-15.

HRDC points to two similar cases that it filed in February 2020 against Tehama Counties and Placer Counties (the "Tehama and Placer County cases") that were settled more quickly than this case because those counties "had the good sense to negotiate with dispatch[.]" *Id.* at 15 (citing Bornstein Decl. ¶¶ 4, 27-29) (citing *Human Rights Defense Center v. County of Tehama*, No. 20-cv-00359-WBS-DMC (Dkt. 23) (E.D. Cal. May 13, 2020) and *Human Rights Defense*

*Center v. County of Placer*, No. 20-cv-00285-JAM-CKD (Dkt. 22) (E.D. Cal. May 14, 2020));
*see also* Bornstein Reply Decl., Ex. 6 (Placer Consent Decree, reflecting settlement amount of
$100,00 including attorneys' fees and costs), Ex. 7 (Tehama Consent Decree, reflecting damages
of $143,500, including attorneys' fees and costs).

To establish that the rates it seeks are reasonable, HRDC offers the declaration of Richard
M. Pearl, an expert on attorney fees, *see* Declaration of Richard M. Pearl in Support of Motion for
Reasonable Attorney's Fees and Expenses ("Pearl Decl."), and declarations from Plaintiff's
attorneys Jeffrey Bornstein and Daniel Marshall.  *See generally,* Bornstein Decl.;  Declaration of
Daniel Marshall in Support of Plaintiff's Motion for Reasonable Attorney's Fees and Expenses
("Marshall Decl.").  HRDC also contends RBGG's rates "have been upheld as reasonable market
rates by multiple courts in multiple venues, including in this district."  Motion at 18 (citing
Bornstein Decl. ¶¶ 33, 35-36).   It points to decisions in *National Federation of the Blind v. Uber
Technologies, Inc.*, No. 14-04086-NC;  *Cole v. County of Santa Clara*, No. 16-cv-06594-LHK;
*Hernandez v. County of Monterey*, No. 13-cv-02354-BLF;  and *Armstrong v. Newsom*, No. 94-cv-
02307-CW.  *Id.* at 18-19 (citing Bornstein Decl., Exs. I-M).  It argues that its current rates
"incorporate only modest increases" from previous years and are consistent with the attorneys'
additional years of experience and increases in overall Bay Area rates.  *Id.* at 18-19

HRDC argues that a 1.5 multiplier on its merits lodestar is appropriate under both federal
and state law.  *Id.* at 21.  It further contends that "[w]here, as here, a Plaintiff prevails on both
federal and state claims, the Court looks to California law for the factors to consider when
awarding a lodestar enhancement multiplier."  *Id.* (citing *Mangold v. Cal. Pub. Util. Comm'n*, 67
F.3d 1470, 1478 (9th Cir. 1995); *Nat'l Fed'n of the Blind v. Target Corp*., Case No. 06-01802
MHP, 2009 WL 2390261, at *6 (N.D. Cal. Aug. 3, 2009) ("When a party prevails under both
federal and state law, the district court may apply the more generous provisions of state law in
calculating a fee award, such as including a multiplier for contingent fee risk.")).

Under California law, HRDC asserts, a multiplier may be awarded based on factors that
include: "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in
presenting them, (3) the extent to which the nature of the litigation precluded other employment by

the attorneys, [and] (4) the contingent nature of the fee award." *Id.* at 21 (quoting *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001)).  HRDC contends federal and state courts in California "often award multiplier enhancements in civil rights cases where one or more of these factors apply." *Id.* (citing *Nat'l Fed'n of the Blind v. Target Corp.*, 2009 WL 2390261, at *9; *Chabner v. United of Omaha Life Ins. Co.*, Case No. C-95-0447 MHP, 1999 WL 33227443 at *6-7 (N.D. Cal. Oct. 12, 1999); *Ctr. for Biological Diversity v. County of San Bernardino*, 185 Cal. App. 4th 866, 897 (2010); *City of Oakland v. Oakland Raiders*, 203 Cal. App. 3d 78, 84 (1988)).  Moreover, it argues, these factors support the award of a multiplier here "given the unusual skill demonstrated, the exceptional and speedy results achieved, and the contingent risk of the recovery" in this case. *Id.*  It contends the magnitude of the multiplier is "well within the range of recently approved multipliers." *Id.* at 22 (citing cases).

HRDC also argues that the 1.5 multiplier it seeks is appropriate under federal law.  *Id.*  According to HRDC, under federal law a multiplier is appropriate "where necessary to achieve the objective of 42 U.S.C. § 1988 to ensure civil rights litigants can attract competent counsel, and is awarded when counsel's performance was and the results achieved are excellent."  *Id.* at 22 (citing *Perdue v. Kenny A. ex. Rel. Winn*, 559 U.S. 542, 554 (2010)).  That standard also supports a 1.5 multiplier, HRDC contends. *Id.*

Finally, as to their fees on fees work, HRDC argues it is entitled to attorneys' fees under both federal and California law.  *Id.* at 20.  In the Motion, it requests an award of $26,350 for a total of 33.2 hours for work performed by RBGG through July 31, 2020 and by HRDC's in-house counsel through August 3, 2020.  *Id.*  HRDC contends its attorneys spent 53.8 hours on the Motion but have "written down 20.6 hours," reducing the total hours worked on the fee motion by 40.6% and the total requested fee amount by 32.7%.  *Id.*

### 2.  The Bornstein Supplemental Declaration

Ten days after filing the Motion and before Defendants filed their Opposition brief, HRDC filed a supplemental declaration updating the amount of fees it was seeking to reflect fees on fees work performed between August 1, 2020 and August 15, 2020.  Bornstein Supp. Decl.   In the supplemental declaration, HRDC requests an additional $52,300 for work on the fee motion by

6

RBGG during this period, bringing its total fees on fees request up to $78,650.00.  *Id.* at 4.
According to HRDC's counsel, this amount reflects "discrete billing judgment reductions of
$27,675" as well as an additional reduction of $6,000 "to insure that [HRDC is] not claiming
unduly duplicative or unnecessary time." *Id. ¶* 4.

### 3. Opposition

In their Opposition, Defendants do not dispute that HRDC is entitled to an award of
reasonable attorneys' fees and costs, including fees on fees, but contend the lodestar amount
HRDC requests reflects unreasonable hours and rates and that HRDC is not entitled to a
multiplier.  *See generally* Opposition (Dkt. 41).  They further assert that because the parties
stipulated only that HRDC was the prevailing party under 42 U.S.C. § 1988, HRDC is not entitled
to recover fees for work on  its state law claims and also cannot rely on California law in support
of its multiplier request, which is governed exclusively by federal law.  Opposition at 1, 20 n. 7,
24.

In addressing the reasonableness of HRDC's lodestar amount, Defendants consider the
work billed in three discrete stages of the case: 1) the work billed through February 24, 2020,
when the complaint and the motion for preliminary injunction were filed; (2) work billed between
February 25, 2020 and July 15, 2020, when the parties were negotiating the settlement and
Consent Decree;  and 3) work billed on the fee application.  *Id.* at 2; *see also* Declaration of
Marshall E. Bluestone in Support of Defendants' Opposition to Plaintiff's Motion for Reasonable
Attorney's Fees and Expenses ("Bluestone Decl.") ¶ 9.

As to the first period, Defendants request the Court reduce the fees HRDC seeks by fifty
percent, to $20,942.  Opposition at 11; *see also* Bluestone Decl. ¶ 30 (finding based on review of
HRDC's billing records that it is seeking $41,884.30 in attorneys' fees for 70 hours of work
during this period).  First, Defendants argue the time billed is excessive because the complaint and
motion for preliminary injunction were "identical or nearly identical" to earlier filings by HRDC
in the Placer and Tehama County cases, for which HRDC already received attorneys' fees as part
of the settlements in those cases.  *Id.* at 7–8.  Defendants argue that given the similarities in the
pleadings of the earlier cases, "[i]t certainly would not take 70 hours of time . . . to alter the

United States District Court
Northern District of California

complaint, declarations and motion for the factual differences when the factual differences in mail

returned policies were <u>already</u> catalogued in August 2019 by Mr. Marshall and the policy

differences had <u>already</u> been researched as reflected in the billing records." *Id.* at 8 (citing

Bluestone Decl. ¶ 11). HRDC argues the time billed is excessive in light of the efficiency and

expertise HRDC claims in support of their "very high billable rates." *Id.* at 9.

Second, Defendants argue that because the parties did not stipulate that HRDC was the

prevailing party on its state law claims, HRDC is not entitled to fees for work on those claims

pursuant to any stipulation. *Id.* at 10-11. Moreover, Defendants assert, HRDC's Bane Act

claim— which provides one of the grounds for HRDC's request for attorneys' fees under state

law—would not have survived a motion to dismiss and therefore would not have given rise to

liability. *Id.* In particular, Defendants argue that to prevail on its Bane Act claim, HRDC would

have been required to show that Defendants interfered with or threatened to interfere with the

rights of the Plaintiff "by threats, intimidation, or coercion" but HRDC did not include any factual

allegations to support such a claim. *Id.* at 10. Therefore, Defendants argue, HRDC is not entitled

to fees for work on its state law claims, such as the time it spent filing the government tort claim to

satisfy the state law exhaustion requirement. *Id.*; *see also* Bluestone Decl. ¶ 33, Ex. S (finding that

HRDC billed $875.50 in attorneys' fees for time spent on the state law government claim).

Because HRDC does not differentiate in its timesheets between work on state law claims and work

on federal law claims (except as to the time spent on the state tort claim), Defendants ask the

Court to reduce the requested lodestar for this period by 50%. Opposition at 11.

Defendants also request a 50% reduction of the lodestar as to the second period (the

negotiation period) on the basis of "duplication of work by overstaffing," which would result in an

adjusted lodestar amount of $43,695 for this period. *Id.* at 12-16. Defendants point to the total

time billed for this period (107.5 hours, translating to fees in the amount of $85,391 at HRDC's

requested rates) and compare it to the time billed on the direct communications that occurred – a

total of 16.1 hours for 13 phone calls, 18 emails, and three letters over a three-month period,

translating to $13,578 in fees. *Id.* at 13; Bluestone Decl. ¶ 18. When time spent on all of the

direct communications is subtracted out, HRDC seeks fees for an additional 91.4 hours, translating

1    to $71,813 in fees for this period.  *Id.*  Defendants argue that this additional time was the result of

2    "numerous secondary communications," review of the same material by up to three additional

3    attorneys and two paralegals, and excessive conferencing, which should not have been necessary

4    given the claimed expertise and efficiency of HRDC's attorneys.  *Id.* at 9-10, 14-16; *see also*

5    Bluestone Decl., Ex. N (itemizing time entries involving "secondary communications").

6           As to the third period, Defendants contend the total time billed through August 15, 2020

7    (based on the evidence submitted with the Motion and the supplemental declaration supplied ten

8    days later) was 106.4 hours, giving rise to fees on fees in the amount of $78,650, constituting

9    62%  of all fees sought by HRDC for work on the case or 188% of the fees HRDC seeks for

10   investigating and filing the complaint and preliminary injunction papers.  *Id.* at 22-23 (citing

11   Bluestone Decl. ¶¶ 29-30).  Defendants argue this amount of time is excessive.  *Id.*  First,

12   Defendants argue HRDC overstaffed and duplicated its work, pointing to twenty hours it contends

13   HRDC's attorneys spent "conferencing" about the fee motion.  *Id.* at 23 (internal quotation marks

14   omitted).  Second, Defendants again argue that to the extent HRDC relies on state law in the

15   Motion, the time spent on the fee motion should be reduced because HRDC is not entitled to any

16   fees on state law claims, as discussed above.  *Id.* at 24-25.  Thus, for this period, like the other

17   two, Defendants ask the Court to reduce HRDC's lodestar amount by 50%, to $39,325.  *Id.* at 25.

18          Defendants also object to HRDC's request for fees "for secretarial tasks performed by

19   mainly paralegals at as much as $350 per hour."  *Id.* at 16 (citing Bluestone Decl., Ex. O (itemized

20   list of time entries)).[2]  Because such clerical work should be included in attorney overhead costs, it

21   should not have been billed, Defendants assert.  *Id.*

22          Defendants also argue that the hourly rates HRDC requests are excessive given that the

23   case settled quickly, before any "active litigation" occurred, and was not complex.  Opposition at

24   _____

25   [2] The time entries identified by Defendants are for three paralegals: 1) F. Gail LaPurja for 9.2
     hours of work between February 20, 2020 and June 15, 2020, which according to Defendants was
26   billed at a rate of $320/hour, giving rise to fees in the amount of $2,944.00; 2) Linda H. Woo for
     2.2 hours of work between February 21, 2020 and April 24, 2020, which according to Defendants
27   was billed at a rate of $350/hour, giving rise to fees in the amount of $770.00; and 3) Kathy Moses
     for 5.6 hours of work between March 2, 2020 and May 8, 2020, which according to Defendants
28   was billed at a rate of $260/hour, giving rise to fees in the amount of $1,456.00. Bluestone Decl.,
     Ex. O.

United States District Court
Northern District of California

17-20.  In contrast, Defendants contend, the cases HRDC and its expert, Mr. Pearl, rely on to show its rates are reasonable involved drawn-out litigation, complex cases and class actions, and bankruptcy cases in which counsel had to wait for years to receive compensation.  *Id.* at 17.

In addition to their contention that the lodestar amount HRDC requests is excessive, Defendants content there is no justification for awarding a multiplier in this case.  *Id.* at 20-22. They argue that only federal law should be considered in making this determination because the parties did not stipulate that HRDC was a prevailing party under state law, as discussed above.  *Id.* at 20 n. 7.  Under federal law, they argue, there is a strong presumption that the lodestar represents a reasonable fee and that presumption is overcome only in "rare" cases supported by "specific evidence" and "detailed findings."  *Id.* (citing *Blum v. Stenson*, 465 U.S. 886, 897 (1984); *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)). According to Defendants, "[t]he novelty and complexity of the litigation, quality of representation, results of the litigation or novelty of the issues do not justify an upward adjustment."  *Id.*  at 20-21 (citing *Blum*, 465 U.S. at 897-900). Nor does "the contingency of the risk involved justify an upward adjustment[,]" Defendants assert.  *Id.* at 21 (citing *Dague*, 505 U.S. at 565-566).   To the extent HRDC argues that a multiplier is warranted because it was able to achieve a quick settlement, Defendants contend there is no authority to support such an approach, "which would deter prompt settlements like the one entered into by Defendants."  *Id.*  Defendants also reject HRDC's assertion that it is difficult to find counsel to represent in these types of cases, arguing that the declarations supplied by HRDC show that it has been represented by counsel in "dozens of actions over the years." *Id.* (citing Motion at 2; Marshall Decl. ¶ 6). In sum, Defendants assert, this is not a "rare" case and no multiplier should be awarded. *Id.*  at 22.

### 4.  Reply

In its Reply, HRDC seeks an additional $50,000 in fees on fees, bringing the total amount sought for fees on fees up to $128,650.  Reply at 13; Jeffrey L. Bornstein Reply Declaration in Support of Plaintiff HRDC's Motion For Reasonable Attorneys' Fees and Expenses ("Bornstein Reply Decl.") ¶¶ 48-49.  According to Plaintiffs, the actual amount incurred for work on the fee motion after August 15, 2020 was $121,554, but it exercised billing judgment as to $20,236 and

10

1   further reduced the amount requested by 50%, giving rise to the additional fees on fees request of

2   $50,000.  Bornstein Reply Decl., ¶ 48, Ex. O.

3       HRDC acknowledges that the amount it seeks for fees on fees is high, but contends the

4   work on the fee motion was necessary because Napa County "dug its heels in and insisted on

5   litigating the amount of HRDC's fees, despite offers to mediate and fair warning along the way

6   that such a fight would be expensive." *Id.* (citing Bornstein Reply Decl. ¶ 27).  HRDC further

7   asserts that "[t]his is one of those cases in which large fees for fees that are substantial relative to

8   the merits fees should be awarded." *Id.* (citing *Prison Legal News v. Schwarzenegger*, No. C 07-

9   02058 CW, 2008 WL 11411620 at *2, *4 (N.D. Cal. Dec. 5, 2008) (awarding $88,940.29 for

10   223.7 hours of fees work and $48,562.17 for 162.7 hours of merits work), affirmed in part,

11   vacated in part, remanded by 608 F.3d 446, 450 (9th Cir. 2010); *Bernardi v. Yeutter*, 951 F.2d

12   971, 977 (9th Cir. 1991) (awarding $65,641.50 for fees work, 58.2% the size of the merits

13   lodestar); *Prison Legal News v. Schwarzenegger*, 561 F. Supp. 2d 1095, 1101-05, 1107 (N.D. Cal.

14   2008) (granting request for fees with $42,098.38 for fees work, 44.7% the size of the merits

15   lodestar); Pearl, California Attorney Fee Awards § 9.23 at p. 9-30.1 (3d ed. Mar. 2019) ("In

16   *Graham v. DaimlerChrysler Corp.*, [34 Cal. 4th 553 (2004)], a catalyst case, the trial court awarded

17   plaintiffs fees of $762,830, at least 90 percent of which were for fees on fees."); *Lucas v. White*,

18   63 F. Supp. 2d 1046, 1060 (N.D. Cal. 1999) (awarding fees for fees for 394.74 hours for single fee

19   motion, not including reply brief and hearing)).

20       HRDC rejects Defendants' argument that it cannot seek attorneys' fees under state law,

21   arguing instead that it is entitled to its attorneys' fees not only under federal law but also under

22   Cal. Civ. Code section 52.1(i) for prevailing on its well pled California Bane Act claims, and

23   under Cal. Code Civ. Proc. section 1021.5 ("Section 1021.5").  *Id.*  at 3-4 (citing *Rodriguez v.*

24   *County of Los Angeles*, 891 F.3d 776, 808 (9th Cir. 2018) (prevailing plaintiff entitled to fee

25   award on both federal civil rights and Bane Act claims); *Blackwell v. Foley*, 724 F. Supp. 2d 1068,

26   1074 (N.D. Cal. 2010)).  First, HRDC asserts that it did not waive its right to seek attorneys' fees

27   under state law when it entered into the Consent Decree.  *Id.* at 4.   In particular, it contends

28   "[w]aiver of attorney's fees in a settlement agreement must be clear" and under that standard there

United States District Court
Northern District of California

11

1   was no waiver here. *Id.* at 4 (citing *Muckleshoot Tribe v. Puget Sound Power Light Co.*, 875 F.2d

2   695 (9th Cir. 1989)).  Instead, it contends, the Consent Decree expressly recognized HRDC's

3   well-pleaded state law claims, as well as the fact that HRDC filed a state tort claim before bringing

4   this action. *Id.*

5       HRDC argues further that it is entitled to fees under California law. *Id.*  According to

6   HRDC, under California law a party may seek fees as a prevailing party if the party "successfully

7   obtain[ed] a stipulated injunction entered as a judgment, bringing about a change in the parties'

8   legal relationship." *Id.* (citing *Vasquez v. State of California*, 45 Cal. 4th 243, 259 (2008)).

9   Alternatively, HRDC asserts, a party may be considered the prevailing party under the "catalyst

10  theory" if the underlying claim was not frivolous, unreasonable or groundless. *Id.* (citing *Belth v.

11  Garamendi*, 232 Cal. App. 3d 896, 901 (1991)). HRDC contends it is a prevailing party under both

12  theories. *Id.* at 5-7.

13      HRDC rejects Defendants' arguments that the hourly rates it seeks are unreasonable,

14  reiterating its position that those rates are appropriate and argues the rates are "well within the

15  range for billing rates" by comparable Bay Area attorneys and paralegals in comparable cases. *Id.*

16  at 8.  As to Rosen's requested rate, HRDC cites *Prison Legal News v. Schwarzenegger*, 608 F.3d

17  446 (9th Cir. 2010), in which the Ninth Circuit approved Rosen's 2008 hourly rate of $740.  Reply

18  at 8–9.  HRDC further asserts that the Court should reject Defendants' attempt to discredit the

19  opinions of Mr. Pearl, who is "a leading expert on attorney's fees rates and practices." *Id.* at 9.

20      HRDC argues further that the Court should award HRDC its full lodestar rather than

21  making the 50% reductions sought by Defendants. *Id.* at 9.  It argues that considerable work was

22  necessary to investigate, research, and prepare the complaint and the motion for preliminary

23  injunction, rejecting Defendants' characterization of this case as "a simple cookie-cutter case" in

24  which HRDC used boilerplate pleadings from the Placer and Tehama County cases. *Id.* at 9–10

25  (citing Bornstein Reply Decl. ¶¶ 10-17, Exs. 1-7 (redlines comparing complaint and preliminary

26  injunction motion in this case to complaints and preliminary injunction motions in the Placer and

27  Tehama County cases)).  HRDC further contends that Defendants "force[d] time-consuming

28  negotiations" by refusing to engage in negotiations before filing and refusing to settle, *id.* at 10,

12

and argues "additional conferences and communications among counsel" was necessary to address Defendants' "intransigent negotiation tactics." *Id.* at 11. HRDC also points to the significant billing judgment reductions it has made to ensure that it does not seek fees for duplication of efforts. *Id.* Lastly, HRDC argues that Defendants have not provided a clear roadmap for the Court to award fees, pointing as an example to their request for a 50% reduction in total fees incurred in the negotiation stage of the case even while appearing to acknowledge that the fees that were incurred for direct communications during that stage of the case are valid. *Id.*; Bornstein Reply Decl. ¶ 40.

Finally, HRDC asserts that its request for a multiplier should be granted, emphasizing that it is seeking a multiplier "primarily" under state law, which it contends is "more generous" than federal law. *Id.* at 14. It argues that under California law, the requested 1.5 multiplier on merits fees is warranted because of the excellent results it obtained and the contingent risk taken on by counsel in representing HRDC. *Id.* (citing *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001)).

## III.   ANALYSIS

### A.   Legal Standard

Both federal and California courts have adopted the "lodestar" method for determining reasonable attorneys' fees. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (concerning attorneys' fee awards under 42 U.S.C. § 1988); *PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000) (fee setting inquiry in California ordinarily begins with the lodestar). The lodestar figure is the product of the hours counsel reasonably spent on the case and a reasonable hourly rate. *Jordan v. Multnomah Cty.*, 815 F.2d 1258, 1262 (9th Cir. 1987).

"The hourly rate for successful civil rights attorneys is to be calculated by considering certain factors, including the novelty and difficulty of the issues, the skill required to try the case, whether or not the fee is contingent, the experience held by counsel and fee awards in similar cases." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1114 (9th Cir. 2008). Furthermore, to determine whether a party's claimed hours are reasonable, the court must review attorneys' time records to determine whether the hours are adequately documented in a manner that can be properly billed directly to clients. *Hensley*, 461 U.S. at 434; *see also Chalmers v. City of Los*

13

*Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986) (holding that the fee applicant bears the burden of submitting detailed time records justifying the hours claimed to have been expended). A fee applicant should "exercise 'billing judgment' with respect to hours worked." *Hensley*, 461 U.S. at 437. The court must also assess whether the hours claimed are vague, block-billed, excessive or duplicative. *See Navarro v. General Nutrition Corp.*, No. C 03-0603 SBA, 2005 WL 2333803, at *11, 15 (N.D. Cal. Sept. 22, 2005).

The fee applicant bears the burden of producing satisfactory evidence that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation. *Jordan*, 815 F.2d at 1263. As a general rule, the forum district represents the relevant legal community. *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992). Fee applicants may provide affidavits of practitioners from the same forum with similar experience to establish the reasonableness of the hourly rate sought. *See, e.g., Mendenhall v. Nat'l Transp. Safety Bd.*, 213 F.3d 464, 471 (9th Cir. 2000); *Jones v. Metro. Life Ins. Co.*, 845 F. Supp. 2d 1016, 1024–25 (N.D. Cal. 2012). Decisions by other courts regarding the reasonableness of the rates sought may also provide evidence to support a finding of reasonableness. *See Widrig v. Apfel*, 140 F.3d 1207, 1210 (9th Cir. 1998) (holding that a rate set by the district court based, in part, on the rate awarded to same attorney in another case, was reasonable).

### B.    Request for Judicial Notice

Defendants request the Court take judicial notice of the following: (1) Declaration of Brian Gearinger in Support of Plaintiff's Motion for Order Awarding Interim Attorneys' Fees and Expenses in *Medina v. Xavier Berrera, et al.*, USDC Case No. 17-cv-03293-CRB; (2) Declaration of John Houston in Support of Plaintiff's Motion for Order Awarding Interim Attorneys' Fees and Expenses in *Medina v. Xavier Becerra, et al.*, USC Case No. 17-cv-003293-CRB; and (3) Declaration of Mari Mayeda in Support of DFEH's Motion for Order Awarding Attorneys' Fees and Costs in *DFEH v. Law School Admissions Council, Inc.*, USDC Case No. 12-1830-JCS. *See* Request for Judicial Notice in Support of Defendants' Opposition to Plaintiffs' Motion for Reasonable Attorneys' Fees and Expenses (Dkt. 44). HRDC has not objected to the request. *See*

1   *generally* Reply.

2       Under Rule 201 of the Federal Rules of Evidence, a court may take judicial notice of a

3   "fact that is not subject to reasonable dispute because it . . . can be accurately and readily

4   determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.

5   Under Rule 201, a court may take judicial notice of matters of public record, such as court filings.

6   *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking judicial

7   notice of "pleadings, memoranda, expert reports," and other court filings as "they nonetheless are

8   readily verifiable and, therefore, the proper subject of judicial notice").  A court may also take

9   judicial notice of the court's own records in other cases.  *United States v. Wilson*, 631 F.2d 118,

10  (9th Cir. 1980).  However, "[j]ust because the document itself is susceptible to judicial notice does

11  not mean that every assertion of fact within that document is judicially noticeable for its truth."

12  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

13      Because the three documents are matters of public record, including from the court's own

14  records, the Court finds that judicial notice is appropriate.  However, as the facts contained within

15  the declarations are subject to reasonable dispute, the Court only takes judicial notice of the fact

16  that the declarations were filed in each matter.  *See Gurasich v. IMB Retirement Plan*, No. 14-cv-

17  02911, 2016 WL 3683044, at *6 n.3 (N.D. Cal. July 12, 2016) (taking judicial notice of the fact

18  that declarations were filed in other motions for attorneys' fees).

19      **C.     Whether Plaintiff is Entitled to Fees and Costs Under State Law**

20      The parties devote a significant portion of their briefs to the question of whether Plaintiff is

21  entitled to seek attorneys' fees under California law as well as under federal law.  This dispute has

22  potential implications for: 1) whether the Court should award fees for work that was necessitated

23  solely by the state law claims (*e.g.*, the time spent on the tort claim that was filed to satisfy state

24  law exhaustion requirements) to the extent such work can be separated out; and 2) whether the

25  Court should look to California or federal law in determining whether a multiplier should be

26  awarded on the merits work. The Court concludes that HRDC is entitled to seek attorneys' fees

27  and costs under both federal and state law.

28      First, the Court finds that although the parties did not stipulate in the Consent Decree that

United States District Court
Northern District of California

United States District Court
Northern District of California

1   HRDC would be entitled to fees and costs under California law, HRDC also did not waive the

2   right to seek such fees and costs.   A "waiver of attorneys' fees may be established by clear

3   language in the release" or, "if the language in the release is unclear or ambiguous, [by]

4   surrounding circumstances [that] clearly manifest the intent of the parties that attorneys' fees be

5   waived." *Muckleshoot Tribe*, 875 F.2d at 698; *see also Folsom v. Butte County Association of*

6   *Governments*, 32 Cal. 3d 668, 671 (1982) (declining to bar fees under California Code of Civil

7   Procedure section 1021.5 where the parties' agreement was silent as to fees). The defendant bears

8   the burden of showing that the "parties mutually intended the disputed language in the consent

9   decree to constitute a release of attorneys' fees." *Muckleshoot Tribe*, 875 F.2d at 698 (citing

10  *Wakefield v. Mathews*, 852 F.2d 484, 484 (9th Cir. 1988)).  Here, the consent decree does not

11  contain clear language demonstrating that HRDC waived its right to attorneys' fees under state

12  law.  *See id.* at 699 (reiterating the Ninth Circuit's rejection of the "'waiver by silence' rule").  Nor

13  have Defendants provided the Court with any extrinsic evidence that HRDC intended to waive its

14  rights to fees under state law.  *See Fitzgerald v. City of Los Angeles*, No. CV 03-01876 DDP

15  (RZx), 2009 WL 960825, at *6 (C.D. Cal. Apr. 7, 2009) (finding no waiver where defendant

16  "presented no evidence that its reading of the ambiguous language reflects the intent of the

17  parties").  Therefore, HRDC did not waive its right to seek attorneys' fees under state law.

18         Second, the Court finds that HRDC is entitled to attorneys' fees and costs under the Bane

19  Act and California Civil Code section 1021.5.[3]  Section 1021.5 "codifies the private attorney

20  general doctrine[,]" providing that "a court may award attorney fees to a successful party in any

21  action which has resulted in the enforcement of an important right affecting the public interest" if

22  certain requirements are met.  *Hawkins v. City of Los Angeles*, 40 Cal. App. 5th 384, 397 (2019).

23  In particular, Section 1021.5 provides in relevant part:

24              Upon motion, a court may award attorneys' fees to a successful party
                against one or more opposing parties in any action which has resulted
25              in the enforcement of an important right affecting the public interest
                if: (a) a significant benefit, whether pecuniary or nonpecuniary, has
26

27  ---
[3] Because HRDC is entitled to an award of fees and costs under California law on the basis of its
28  Bane Act claim, the Court does not reach HRDC's alternative argument that it is also entitled to
    seek fees and costs under state law based on its direct constitutional claims.

> been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not be in the interest of justice be paid out of the recovery, if any.

Cal. Code Civ. Proc. § 1021.5.  Defendants have not disputed that the four requirements of this section have been met and the Court finds that they have.  HRDC's action has enforced constitutional rights to free speech and due process by enjoining Napa County's policies and practices related to the receipt of mail by individuals incarcerated in Defendants' facilities.  In doing so, the action has enforced "an important right affecting the public interest" and has conferred a "significant benefit" on "a large class of persons."  The Court further finds that private enforcement and the associated financial burden was necessary and that in "the interest of justice" attorney's fees should not be paid out of the recovery.  The only remaining question is whether HRDC qualifies as a "successful party" under this provision. The Court concludes that it does.

A "successful party" is "the party to the litigation that achieves its objectives." *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 567 (2004).  Where a party "successfully obtain[s] a stipulated injunction that was entered as a judgment and thus brought about a judicially recognized change in the parties' legal relationship," it is entitled to attorneys' fees under section 1021.5. *Vasquez v. State of California*, 45 Cal. 4th 243, 260 (2008), as modified (Dec. 17, 2008). Further, "[a] stipulated injunction approved by a court and entered as a judgment is, in effect, a consent decree." *Id.* (noting that "[e]ven the federal courts, which reject the catalyst theory, recognize a consent decree as a sufficient basis for awarding attorney fees.").[4]  Here, HRDC is the "successful party" because it obtained a consent decree and a change in the parties' legal relationship whereby

---

[4] HRDC also argues it is the prevailing party under the "catalyst theory."  Reply at 5.  Under the catalyst theory, an award of attorneys' fees may be appropriate where a plaintiff's lawsuit was "a catalyst to defendant's changed behavior," the lawsuit had merit, and the plaintiff "engaged in a reasonable attempt to settle its dispute with the defendant prior to litigation." *Graham.*, 34 Cal. 4th at 567.  Under the catalyst theory, a lawsuit has merit if it is not "frivolous, unreasonable or groundless." *Id.* at 575.  The catalyst theory only applies when "litigation does not result in judicial resolution." *Id.* at 560.  In *Vasquez*, the California Supreme Court clarified its ruling in *Graham* and held that the catalyst theory is not applicable when a party "successfully obtain[s] a stipulated injunction that was entered as a judgment and thus brought about a judicially recognized change in the parties' legal relationship." 45 Cal. 4th at 260.  As stated above, HRDC obtained a "stipulated injunction that was entered as a judgment" and therefore a "judicially recognized change." *See id.*  Therefore, the catalyst theory is not applicable here.

United States District Court
Northern District of California

the Court retains jurisdiction to enforce the agreement against Defendants.  Moreover, while

Defendants now challenge HRDC's Bane Act claim on the basis that it is insufficiently pled, they

did not bring a motion to dismiss that claim, which was one of the claims that was settled when

the parties entered into the Consent Decree.[5]  Accordingly, the Court finds that HRDC is a

"successful party" under section 1021.5 and therefore entitled to reasonable fees under California

law.

### D.   Lodestar Amount

#### 1.   Reasonable Rates

HRDC seeks the following hourly rates for four attorneys and three paralegals who worked

on the instant action: 1) Sanford J. Rosen (RBGG Partner)—$1,100/hour; 2) Jeffrey L. Bornstein

(RBGG Partner)—$950/hour; 3) Daniel Marshall (HRDC General Counsel)—$650/hour; 4)

Benjamin Bien-Kahn (RBGG Senior Counsel)—$625/hour; 5) Linda H. Woo (RBGG Senior

Paralegal)—$350/hour; 6) Kathy Moses (HRDC Paralegal)—$260/hour; and 7) F. Gail LaPurja

(RBGG Senior Paralegal)—$128/hour.[6]  In support of these rates, HRDC offers the declaration of

Richard M. Pearl, an expert on issues related to court-awarded attorneys' fees, as well as the

declaration of Mr. Bornstein, who is a partner at RBGG and participates in the process of setting

billing rates for his firm each year.  Pearl Decl. ¶ 2; Bornstein Decl. ¶ 34.  In addition, HRDC has

supplied a declaration of its general counsel, Danial Marshall, addressing the reasonableness of the

rates billed by the HRDC timekeepers (Daniel Marshall and Kathy Moses).

As a preliminary matter, the Court places significant weight on the opinion of Mr. Pearl

that the rates charged by all of the timekeepers listed above are reasonable and "'in line with the

rates' charged by law firms that engage in federal civil litigation in the San Francisco Bay Area."

Pearl Dec. ¶ 13. Mr. Pearl has extensive experience in the area of attorney billing rates in this

---

[5] The Court further notes that to the extent Defendants assert HRDC was required to (and did not) allege interference or threats by Defendants beyond the coercion inherent in the violation of the plaintiff's constitutional rights to state a viable claim under the Bane Act, the undersigned has expressly rejected that argument. *See Watkins v. City of Oakland*, No. 17-cv-06002-JCS, 2018 WL 574906, at *9-13 (N.D. Cal. Jan. 26, 2018).  For the reasons stated in that case, the Court finds Defendants' argument that Plaintiff's Bane Act claim was insufficiently pled unpersuasive.
[6] Although F. Gail LaPurja, Senior Paralegal, generally bills at $320 per hour, Plaintiff requests a discounted rate of $128 to "account for billing judgment discounts."  Motion at 17.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

district and has been widely relied upon by both federal and state courts in Northern California (including the undersigned) in determining reasonable billing rates.  *Id.*  ¶¶ 5-7 (describing experience and listing cases in which courts have relied upon Mr. Pearl's opinions).

Further, it is significant to the undersigned that numerous judges in this district have found that RBGG's rates – including its 2020 rates – are reasonable.  *See Hernandez v. County of Monterey,* Case No. 13-cv-02354-BLF, Order Vacating Hearing on Plaintiffs' Motion for Attorneys' Fees and Expenses; and Granting Motion (Dkt. No. 653) (N.D. Cal. May 1, 2019) (approving RBGG's fees based on RBGG's requested 2018 rates); *Cole v. County of Santa Clara*, Case No. 16-CV-06594-LHK, Order Granting Final Approval of Class Settlement and Motion for Attorneys' Fees (Dkt. No. 86) (N.D. Cal. Mar. 21, 2019) (approving RBGG's fees based on RBGG's requested 2018 rates);  *National Federation of the Blind v. Uber Technologies, Inc*., Case No. 14-cv-04086-NC, Order Granting Final Approval and Attorneys' Fees (Dkt. No. 139) (N.D. Cal. Dec. 6, 2016) (approving RBGG's fees based on RBGG's 2016 rates); *Hernandez v. County of Monterey*, Case No. 13-cv-02354-PSG, Order Granting Attorneys' Fees and Expenses (Dkt. No. 510) (N.D. Cal. Nov. 9, 2015) (approving RBGG's requested lodestar based on RBGG's 2015 rates); *Armstrong v. Newsom*, Case No. C-94-02307-CW, Stipulated Order Confirming Undisputed Attorneys' Fees and Costs for the First Quarter of 2020 (Dkt No. 2968) (N.D. Cal. June 24, 2020) (approving RBGG's 2020 rates, including a rate of $625 for Mr. Bien-Kahn and a rate of $1,100 for an RBGG partner who is a 1980 law school graduate); *Armstrong v. Newsom*, No. C-94-02307-CW, Stipulated Order Confirming Undisputed Attorneys' Fees and Costs for the First Quarter of 2019 (Dkt No. 2867) (N.D. Cal. May 30, 2019) (approving RBGG's 2019 rates); *Armstrong v. Brown*, No. 4:94-cv-02307-CW, Stipulated Order Confirming Undisputed Attorneys' Fees and Costs for the Second Quarter of 2018 (Dkt No. 2772) (N.D. Cal. Sept. 12, 2018) (approving RBGG's 2018 rates);  *see also*  Bornstein Decl., Exs. I-M.

Below, the Court addresses the reasonableness of the rates sought for each individual.

a.   Rosen

Rosen is a founding partner at RBGG.  Bornstein Decl. ¶ 3.  He received his LLB in 1962 and was admitted to practice in California in 1974.  *Id.* Ex. C.  He has extensive experience in

First Amendment and civil rights litigation and has been recognized as a *Northern California Super Lawyer* (2004–19). *Id.* ¶ 3. HRDC requests an hourly rate of $1,100. Motion at 17. Defendants request a reduction to $875/hour. Opposition at 18. Based on a review of cases in this district, including those cited in the Bornstein and Pearl declarations, the Court finds that the rate of $1,100/hour requested for Mr. Rosen is reasonable.

### b.  Bornstein

Bornstein is a partner at RBGG. Bornstein Decl. ¶ 3. He is a 1981 law school graduate. *Id.* Ex. B (Bornstein's resume). Prior to joining RBGG, Bornstein was an Assistant United States Attorney for the Northern District of California for almost twenty years and a partner at a law firm for ten years. *Id.* ¶ 3. In the instant action, he was lead counsel and led the overall litigation strategy, reviewed and edited the pleadings and moving papers, and handled and directed settlement negotiations. HRDC seeks an hourly rate of $950/hour for Mr. Bornstein's work. Based on a review of cases in this district, including those cited in the Bornstein and Pearl declarations, the Court finds that that rate is reasonable.

### c.  Bien-Kahn

Bien-Kahn is a senior counsel at RBGG. Motion at 16. He is a 2009 law school graduate, *id.*, and completed a one-year clerkship in 2010. Bornstein Decl. ¶ 3. He has been named a "Rising Star" by *Northern California Super Lawyers* from 2014 to 2020. *Id.* Bien-Kahn was one of three attorneys, including Rosen and Bornstein, who primarily staffed the case. *Id.* Plaintiff requests an hourly rate of $625. As noted above, Judge Wilken found this rate to be a reasonable. *Armstrong v. Newsom*, No. C-94-02307-CW (Dkt. 2968) (N.D. Cal. June 24, 2020). The undersigned agrees.

### d.  Marshall

Daniel Marshall is the General Counsel and Litigation Director for HRDC. Marshall Decl. ¶ 1. He graduated from law school and was admitted to practice in Florida in 2002. *Id.* ¶ 9. He was a public defender in Florida before moving into private practice, specifically criminal defense and civil litigation. *Id.* Plaintiff requests an hourly rate of $650/hour, which is in line with the rates awarded in this district for attorneys with comparable experience. *See Gonzales v. City of*

United States District Court
Northern District of California

United States District Court
Northern District of California

1    *San Jose*, No. 13-cv-00695-BLF, 2016 WL 3011791, at *4–5 (N.D. Cal. May 26, 2016) (awarding

2    $625 hourly rate for attorney with "nearly twenty years of legal experience").  Defendants also do

3    not object to the hourly rate requested for Marshall.  Opposition at 20.  Accordingly, the Court

4    finds that rate is reasonable.

5                    e.   Moses, LaPurja, and Woo

6          HRDC seeks fees for three paralegals who worked on this case: Moses (at a requested

7    hourly rate of $260); LaPurja (at a requested hourly rate of $128), and Woo (at a requested hourly

8    rate of $350).  Motion at 17.  Moses obtained her associate degree in paralegal studies in 1993 and

9    has "nearly 10 years of experience in legal work."  Marshall Decl. ¶ 3.  Defendants stipulate that

10   the rate sought for Moses is reasonable, *see* Opposition at 20, and the Court agrees.  *See Johnson*

11   *v. Fujitsu Technology and Business of America, Inc.*, No. 16-cv-03698-NC, 2018 WL 2183253, at

12   *7 (N.D. Cal. May 11, 2018) (awarding hourly rate of $250 to paralegals); *Nitsch v. Dreamworks*

13   *Animation SKG Inc.*, No. 14-CV-04062-LHK, 2017 WL 2423161, at *9 (N.D. Cal. June 5, 2017)

14   (awarding rate of $290 to paralegal).  Defendants also do not object to the rate sought by LaPurja,

15   which the Court finds to be well within the range that this Court has found to be reasonable for

16   paralegals.  *See Johnson*, 2018 WL 2183253 at *7; *Nitsch*, 2017 WL 2423161 at *9.  Defendants

17   challenge, however, the rate sought for Woo and request a reduction to $275/hour.  Opposition at

18   20.

19         Ms. Woo is a paralegal with a bachelor of science degree and over thirty years of

20   experience providing legal support, including seven years as a paralegal for the United States

21   Attorney's Office for the Northern District of California.  Bornstein Decl. ¶ 3.   In light of Woo's

22   extensive experience, the Court finds an hourly rate of $350 to be reasonable.  *See Armstrong v.*

23   *Newsom,* No. C-94-02307-CW (Dkt. 2968) (N.D. Cal. June 24, 2020) (awarding 2020 rate of

24   $350/hour for work of RBGG senior paralegal).

25               **2.  Reasonable Time**

26         HRDC has provided timesheets listing each item for which it billed and an exhibit

27   breaking down the total time spent by each timekeeper.  The timesheets reflect that HRDC

28   requests compensation for the following time: (1) 177.5 hours for work on the merits (135.1 hours

by RBGG timekeepers and 42.4 hours by HRDC timekeepers); *see* Bornstein Decl., Ex. 5; Marshall Decl., Ex. A; Bornstein Reply Decl., Ex. 10; and 2) 218.9 hours for work on fees on fees, of which 3 hours were performed by HRDC timekeepers and the remainder of the work was performed by RBGG timekeepers. *See* Bornstein Decl., Ex. G; Marshall Decl. Ex. B; Bornstein Supp. Decl., Ex. N; Bornstein Reply Decl., Exs. 9-10.  It should be noted, however, that with respect to fees on fees, the hours sought are effectively significantly less than the 218.9 hours that are the basis for HRDC's request because HRDC has deducted a significant flat amount off the total fees on fees sought.  *See* Bornstein Reply Decl., Ex. 10 (reflecting that after billing judgment reductions HRDC also reduced the amount billed for fees on fees by over $56,000).

Because Defendants divide the litigation into three distinct phases, the Court does the same in addressing Defendants' challenges.

### a.   Complaint and Motion for Preliminary Injunction

HRDC requests a total of 70.5 hours for time spent on the case through February 24, 2020, when the complaint and motion for preliminary injunction were filed.  Bornstein Decl., Ex. F (reflecting 43.3 hours by RBGG); Marshall Decl., Ex. A (reflecting 27.2 hours by HRDC's in-house counsel).  Defendants argue that the time is excessive because HRDC's filings were nearly identical to the pleadings in the Placer and Tehama County cases, discussed above.  While it may be proper to reduce an attorneys' fee award on the basis that pleadings in the case were "recycled from submissions to other courts," *see Welch v. Metropolitan Life Ins. Co.*,  480 F.3d 942, 950 (9th Cir. 2007), such a reduction is not appropriate here.  Contrary to Defendants' assertion that the pleadings in the Placer and Tehama County cases were "almost identical[,]" *see* Bluestone Decl. ¶¶ 11-14, the redline versions of the pleadings supplied by HRDC show that the pleadings in this case are far from identical to the ones filed in those case.  *See* Bornstein Reply Decl., Exs. 1-7.  Further, it is undisputed that there were factual differences between this case and the Placer and Tehama that County cases; consequently, HRDC was required not only to tailor the pleadings to the specific facts of this case but also investigate those facts.  Therefore, the Court rejects Defendants' argument based on the Placer and Tehama County cases that the time billed for this stage of the case was excessive.

The Court also rejects Defendants' argument that HRDC should not be awarded fees for time it spent on the tort claim that it submitted to exhaust its administrative remedies on the state law claims because, as discussed above, the Court finds that HRDC is entitled to attorneys' fees under both federal and California state law.  Likewise, the Court rejects Defendants' argument that a 50% reduction on HRDC's merits fees is required to account for work on the state law claims for the same reason.

Finally, the Court has reviewed the time entries billed by HRDC – as well as the significant reductions based on exercise of billing judgment – and concludes that the hours billed by HRDC are reasonable for this stage of the case.

b.  Negotiations

HRDC requests a total of 107 hours for time billed from February 25, 2020 through July 17, 2020, when the parties were negotiating the Consent Decree.  *See* Bornstein Decl., Ex. F (reflecting 91.8 hours by RBGG); Marshall Decl. Ex. A (reflecting 15.2 hours by HRDC's in-house counsel).  As discussed above, Defendants argue that the time is excessive, pointing out that only a relatively small portion of this time was spent on direct communications with Defendants. According to Defendants, the work billed for this period reflects overstaffing, resulting in duplicative work performed by multiple timekeepers, excessive communications and conferencing between counsel and too much time spent reviewing each other's work.  Given Bornstein's expertise, Defendants contend, it should not have been necessary to have so many attorneys involved in the case at this stage.

The Ninth Circuit has cautioned that it is generally improper for the court to "impose its own judgment regarding the best way to operate a law firm, [or] to determine if different staffing decisions might have led to different fee requests."  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1115 (9th Cir. 2008).  It is the "difficulty and skill level of the work performed, and the result achieved—not whether it would have been cheaper to delegate the work to other attorneys— [that] must drive the district court's decision."  *Id.*  "The court may reduce the number of hours awarded because the lawyer performed unnecessarily duplicative work."  *Id.* at 1112.  However, "participation of more than one attorney does not necessarily constitute an unnecessary duplication

23

of effort." *Kim v. Fujikawa*, 871 F.2d 1427, 1435 n.9 (9th Cir. 1989) (finding participation by more than one attorney a "reasonable necessity, given the complexity of legal issues and the breadth of factual evidence involved").

Based on its review of the timesheets, the Court finds that any duplication of effort that may have resulted from the staffing choices made by HRD's counsel was adequately addressed through the reductions made as an exercise of billing judgment and that the amount of time billed for communications between HRDC's attorneys and reviews of each other's work was reasonable. Further, while the Court need not decide whether Defendants engaged in "intransigent negotiation tactics," as HRDC contends, there is certainly no authority that suggests that the time spent on direct communications with opposing counsel is an appropriate measure of what is reasonable when parties are negotiating a consent decree. Accordingly, the Court declines to reduce the time billed for this period, which it finds to be reasonable.

### c.   Fees on fees

Defendants argue that HRDC's lodestar for the fee litigation stage of the case must be reduced because: (1) HRDC "triplicate[ed]" work by including excessive hours spent "conferencing" on the fee motion; and (2) the time spent on the fee motion is unreasonable because it is disproportionate to the time spent on the merits. The Court rejects both arguments.

As discussed above, it is the plaintiff's burden to show that inter-office meetings are not excessive or duplicative. *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 949 (9th Cir. 2007) (given "[counsel's] failure to provide a persuasive justification for the intra-office meetings, the district court did not err in finding the intra-office conferences to be unnecessary and duplicative"). Here, HRDC has met that burden. It has provided evidence that it delegated tasks to attorneys with lower billing rates when possible while at the same time assigning tasks to more experienced attorneys when doing so would be more efficient. That approach entails a certain amount of communication and coordination between counsel. In light of the thorough and high quality briefs that HRDC filed in connection with its fee request, the Court concludes that HRDC's strategy was reasonable and that the time spent on communication between counsel was not excessive.

The Court also does not agree that the fees for fees request is unreasonable because it amounts to over half of the merits fee request.  As a general rule, fees awarded for work on a fee motion should "'bear a rational relation to the number of hours spent litigating the merits of the case.'" *Vallejo v. Astrue*, No. 2:09-CV-03088 KJN, 2011 WL 4383636, at *4 (E.D. Cal. Sept. 20, 2011) (quoting *Spegon v. Catholic Bishop*, 175 F.3d 544, 553–54 (7th Cir.1999)).  Nonetheless, courts regularly award fees for work on fee motions that are large in comparison to the fees awarded on the merits.  *See, e.g., Prison Legal News v. Schwarzenegger*, No. C 07-02058 CW, 2008 WL 11411620 at *2, *4 (N.D. Cal. Dec. 5, 2008) (awarding $88,940.29 for 223.7 hours of fees work and $48,562.17 for 162.7 hours of merits work), affirmed in part, vacated in part, remanded by 608 F.3d 446, 450 (9th Cir. 2010);  *Bernardi v. Yeutter*, 951 F.2d 971, 977 (9th Cir. 1991) (awarding $65,641.50 for fees work, 58.2% the size of the merits lodestar); *Prison Legal News v. Schwarzenegger,* 561 F. Supp. 2d 1095, 1101-05, 1107 (N.D. Cal. 2008) (granting request for fees with $42,098.38 for fees work, 44.7% the size of the merits lodestar).  Defendants raised a wide array of objections to HRDC's fee request, which at least partially accounts for the magnitude of the fees on fees relative to the merits work.  The Court further notes that where, as here, a case settles early in the litigation, the proportion of time spent on recovering attorneys' fees relative to the time spent on the merits is likely to be larger than it would be if the parties engaged in lengthy litigation.  In that context, the Court finds that such a comparison is not necessarily a good measure of reasonableness.  Nor does it make sense to take an approach that essentially penalizes a plaintiff for obtaining an early settlement.  In sum, the Court finds that the amount sought in fees on fees bears a "rational relation" to the work performed on the merits under the circumstances of this case.

For these reasons, the Court finds that the time HRDC seeks for its fees on fees work is reasonable.

### d.  Administrative Tasks

Defendants argue that the Court should reduce HRDC's hours for purely clerical and administrative tasks.   The Court rejects Defendants' argument.

In *Missouri v. Jenkins*, the Supreme Court observed that "purely clerical or secretarial

tasks should not be billed at a paralegal [or lawyer's] rate, regardless of who performs them." 491 U.S. 274, 288 n. 10 (1989).   Instead, such clerical tasks should be "subsumed in firm overhead." *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009).  The Court is not persuaded by Defendants' argument, however, because HRDC requested a rate for LaPurja that is 60% lower than her normal hourly rate of $320 (a rate that Court finds to be reasonable), which adequately accounts for the administrative tasks Defendants have identified.  *See* Bluestone Decl., Ex. O; Bornstein Reply Decl. ¶ 43.  With respect to the time identified as administrative for Woo and Moses, HRDC has presented evidence that these tasks were not purely clerical but instead were "functions would have [been] performed by lawyers or at least reviewed by them" if they had not been performed by experienced paralegals.  Bornstein Reply Decl. ¶¶ 44-45.  Finally, HRDC's fee request includes significant discounts based on billing judgment and additional reductions by flat amounts.  The Court therefore concludes it is not appropriate to deduct from the fee award the time Defendants contend was improperly billed for clerical tasks.

### 3.  Conclusion

For the reasons stated above, the Court concludes that HRDC's reasonable lodestar amount is $255,925.30, that is, $127,275.30 for merits work and $128,650.00 for fees on fees.

### E.    Whether a Multiplier is Warranted

HRDC asks the Court to award a multiplier on its merits lodestar (but not on its fees on fees lodestar) of 1.5.  The Court concludes that a multiplier is not warranted under the circumstances of this case.

Under both federal law and California law, the court may award a multiplier and adjust the lodestar upwards or downwards.  *Van Gerwen v. Guar. Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000); *Weeks v. Baker & McKenzie*, 63 Cal. App. 4th 1128, 1176 (1998).  Under federal law, there is a strong presumption that the lodestar is reasonable and should only be adjusted in "'rare' or 'exceptional' cases, supported by both specific evidence on the record and detailed findings . . . that the lodestar amount is unreasonably low or unreasonably high."  *Van Gerwen*, 214 F.3d at 1045 (internal citation omitted).  Under California law, where litigation "involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order

United States District Court
Northern District of California

to approximate the fair market rate for such services," the court may apply a multiplier. *Ketchum*, 24 Cal.4th at 1137. However, the court "should not consider these factors to the extent that they are already encompassed within the lodestar." *Id.* at 1138. The party seeking a multiplier bears the burden of justifying its request. *Id.* at 1138. Under both federal and California law, the court has "broad discretion" in determining whether to award a multiplier. *Id.*; *see also In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation*, 109 F.3d 602 (9th Cir. 1997).

Here, HRDC points to the skill of its attorneys, the excellent results it obtained and the relatively quick settlement reached in the case. These factors are reflected in the lodestar, however, which is based on rates commensurate with what HRDC would have received from a client paying market rates. Moreover, the rates themselves are a reflection of counsel's qualifications and skill. *See Weeks*, 63 Cal. App. 4th at 1176. Furthermore, although HRDC's counsel obtained an ideal settlement for its client, it has not established that the case involved novel or complex issues. *See id.* (finding the lack of novelty and complexity "militated *against* enhancing the fee award"). Nor has HRDC demonstrated that the risk associated with the contingent nature of the representation were substantial enough to justify a multiplier. The Court notes that because of the quick settlement of the case, HRDC was not forced to contend with this risk and work without compensation for a significant period of time. Therefore, the Court awards the lodestar amount without a multiplier, which it finds to be reasonable in light of all the circumstances.

**F.   Costs**

Plaintiff requests $808.35 for the following costs: 1) $445 for Court filing fees; 2) $356.50 for service of process fees; and 3) $6.85 for the mailing of the government tort claim. *See* Bornstein Decl. ¶ 41, Ex. E. Defendants have not objected to any of these requested costs, which the Court also finds to be reasonable. *See* Civil L.R. 54-3; *Cruz v. Starbucks Corp.*, No. C–10–01868 JCS, 2013 WL 2447862 at *10 (N.D. Cal. June 5, 2013) (awarding filing fees and service of process fees); *Garlick v. County of Kern*, No. 1:13-cv-01051-LJO-JLT, 2016 WL 4087057, at *2 (E.D. Cal. Aug. 2, 2016) (awarding cost of preparing and filing government tort claim). Accordingly, the Court awards $808.35 in costs.

IV.     **CONCLUSION**

For the reasons stated above, the motion is GRANTED in part and DENIED in part.  The Court awards $255,925.00 in attorneys' fees and $808.35 in costs.

**IT IS SO ORDERED.**

Dated:  March 28, 2021

_____

JOSEPH C. SPERO
Chief Magistrate Judge

United States District Court
Northern District of California